RICHARD J. KOPPEL-SBN 94045
Member of The State Bar of California
32 Bellvista
Lake Forest, CA 92610
Tel.: (949) 690-7242
Email: chuteman6.rk@gmail.com
*Pro Per*



**F I L E D**
CLERK, U.S. DISTRICT COURT
05/09/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| RICHARD J. KOPPEL,<br><br>　　　　Plaintiff,<br><br>　　v<br><br>ROBERT BONTA, in his official capacity as Attorney General of the State of California, DON BARNES, in his official capacity as the Sheriff-Coroner of the County of Orange, State of California, and DOES 1 – 10.<br><br>　　　　Defendants. | **Case No.:** 8:23-cv-00813-GW-(DFM)<br><br>**COMPLAINT FOR VIOLATION OF THE SECOND, FIFTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION**<br><br>**42 U.S.C. §1983** |

Plaintiff Richard J. Koppel alleges for his Complaint against Defendants Don Barnes, the Sheriff-Coroner of Orange County, Robert Bonta, the Attorney General of California, and Does 1 through 10 as follows:

## INTRODUCTION

1. Plaintiff has been denied a Carry Concealed Weapons license (hereinafter a "CCW)) by Defendant Don Barnes (hereafter the "Sheriff") by and through the Orange County Sheriff's Department (hereafter the "Department" or "OCSD"), for lack of proof of Good Moral character (hereafter "GMC"). Not once, not twice, and for all practical purposes a third time by making it impossible for Plaintiff to complete the application process.

2. This challenge is primarily made pursuant to the Second Amendment as it is applies to the states by the Fourteenth Amendment and the United States Supreme Court's holding in *New York State Rifle & Pistol Association, Inc. v. Kevin V. Bruen*, 597 U. S. ___, 142 S.Ct. 2111, 2126 (2022), hereafter "*Bruen*".

## JURISDICTION AND VENUE

3. This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, of the rights, privileges or immunities secured by the United States Constitution.

4. Venue is proper under 28 U.S.C. § 1391(b)(2) in that this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of the property that is the subject of the action is situated**.**

**THE PARTIES**

5.  Plaintiff is a law-abiding United States citizen residing in Lake Forest, Orange County, California.

6.   Defendant Don Barnes is the Sheriff-Coroner of Orange County (Sheriff) and is sued herein in his official capacity.  The Sheriff is the chief law enforcement officer of the County of Orange, and it is his duty to ensure that California laws are uniformly and adequately enforced in the County. The Sheriff is the head of the Orange County Sheriff's Department (OCSD). The Sheriff and the OCSD regulate and enforce state law in the County related to the sale, transfer, possession, and ownership of firearms. As head of the OCSD, Sheriff Barnes is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the OCSD

7.   Defendant Robert Bonta is the Attorney General of the State of California and is sued herein in his official capacity. The Attorney General is the chief law enforcement officer of the state, and it is his duty to ensure that California's laws are uniformly and adequately enforced. The Attorney General is the head of the California Department of Justice ("DOJ"). The DOJ and its Bureau of Firearms ("Bureau") regulate and enforce state law related to the sale, transfer, possession, and ownership of firearms. As head of the DOJ, Attorney

General Bonta is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the DOJ.

8. Defendants "DOES 1-10" are personally and otherwise responsible for formulating, executing, and administering sections of the *California Penal Code*, which include those related to the possession of firearms, licensing, and manner of carry. The true names or capacities of Defendants DOES 1-10, whether individual, corporate, or otherwise, are presently unknown to Plaintiff and are therefore sued herein as "Does 1-10". Plaintiff reserves the right to request leave of the Court to amend this complaint to identify the true names and/or capacities of one or more of Defendants Does 1-10 within a reasonable time of discovering their identities.

## GENERAL ALLEGATIONS

9. California's firearm regime criminalizes publicly carrying a concealable firearm for self-defense; a right protected by the Second Amendment of the United States Constitution, which is made applicable to the States by the Fourteenth Amendment. See California Penal Code §25400(a). Carrying a concealed weapon in violation of this section is punishable as either a felony or a misdemeanor.  §25400(c).  "Section 25400 does not apply to, or affect, the carrying of a pistol, revolver, or other firearm capable of being

concealed upon the person by a person who is authorized to carry that weapon in a concealed manner pursuant to Chapter 4 (commencing with Section 26150)." §25655. Every county Sheriff is authorized to issue residents of their counties a license to carry a concealed weapon (CCW) pursuant to §26150 as may every "chief or other head of a municipal police department of any city or city and county to their residents" pursuant to §26155. The sheriffs and chiefs have been exercising broad and unfettered discretion to deny licenses to qualified applicants, including Plaintiff, though they met all statutory requirements.

10. Plaintiff is seeking a preliminary injunction enjoining the enforcement of Section 25400 during or after the pendency of this case for the carrying during its pendency. The intent is that Plaintiff is not denied exercising a Constitutional right by a presumptively Unconstitutional statute and that he not be prosecuted following the conclusion of this case for having carried during the period of litigation.

11. Plaintiff is a law-abiding citizen of good moral character; a husband and father, a homeowner, a member of The State Bar of California in good standing, and an honorably discharged Vietnam Veteran. He has never been convicted of a crime, either a misdemeanor or felony, and cannot remember his last moving vehicle violation.

12. While Plaintiff is a law-abiding citizen, the protection of the Second Amendment extends to other members of the community. See *United States of America v. Perez-Gallan*, 2022 WL 16858516, *1, *17 (W.D. Tex. 11/10/2022), citing *Heller at* 580, and **rejecting the argument that the protection of the Second Amendment was limited to a "law-abiding citizen."** (Emphasis added.)

13. Plaintiff applied three times to OCSD for a CCW by filing a "Standard Initial Application And Renewal Application For A License To Carry A Concealed Weapon" (an "Application").

14.  OCSD notified Plaintiff that the first two applications were denied for lack of proof of Good Moral Conduct. OCSD has not expressly accepted or denied Plaintiff's third application, but it has been denied by the Department's failure to give timely notice of approval or denial in violation of §26205[1] and the Department's preventing Plaintiff from completing what the Department calls the application process. This was done by sending Plaintiff for

_____

[1] §26205 requires the Department to give written notice of acceptance or denial within 90 days of the initial application for a new license, or 30 days after receipt of the applicant's criminal background check from the Department of Justice, whichever is later.  The third application having been filed on 2 July 2022, and its criminal background check completed 15 November 2022, written notice of acceptance or denial was due 30 days later on 15 December 2022.

psychological testing, the legality of which is below challenged, after the time for §26205 notification had passed, and then referring Plaintiff was referred to a psychologist who refused to conduct testing unless Plaintiff gave up certain rights and assumed certain risks that neither the Department nor the psychologist were entitled to insist upon.

15. **"A state may not impose a charge for the enjoyment of a right granted by the Federal Constitution"** (*Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943) (Emphasis added.) An OCSD applicant must pay several fees and costs to obtain a CCW, including the license fee and, if referred for psychological testing, $150.00 payable to the psychologist. Just as in *Murdock*, where a demand for payment of a license fee for exercising freedom of religion was found to Unconstitutionally burden First Amendment religious freedom, license and other fees charged for the exercise of Second Amendment rights violate the Constitution.  The Second Amendment is not a second-class right[2]. Bruen at 2156.

-------------------------

[2] "The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780, 130 S.Ct. 3020 (plurality opinion). We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment

16. The first application generated a denial letter providing that "(Plainatiff's) circumstances do not satisfy the requirements listed in Penal Code 26150" and "The requirement of good moral character was not satisfied." A similar letter was sent by OCSD for the second application.

17. The first denial letter further state that, "Applicants and permit holders are not entitled to an appeal of this decision nor is there any property right to possess a CCW license." Such is a clear denial of Due Process.  Plaintiff does not recall if the second application's denial letter said anything about a right of appeal or property rights, but it denied that application for lack of Good Moral Character.

18. Plaintiff is informed and believes that the Department had ample proof that Plaintiff "is" of Good Moral Character, but the Department denied Plaintiff rights protected by the Second Amendment through the Department's and the Sheriff's unfettered exercise of discretion and by so doing denied Plaintiff due process and equal protection.

19. The Department treats §26150 as only setting some of the requirements to carry a concealed weapon and OCSD augments the Legislative

_____

works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense."

wisdom with its own subjective judgement of suitability to carry a concealed weapon.   The vagueness of the meaning of "suitability" permits OCSD to arbitrarily and capriciously deny applicants, and has denied Plaintiff, their Second Amendment rights.

20. OCSD reported the results of his first two CCW applications to the Department of Justice, which leaked[3] them following the *Bruen* decision; a leak by some accounts done to retaliate against Second Amendment proponents. The leak included applicant's names, birth dates, gender, race, driver's license numbers, addresses, and criminal history, and reportedly included retired law enforcement officers and judges.

_____

[3]   "The personal information of every Californian who applied for a concealed carry permit since 2011 was leaked this week, authorities said.

"When the Department of Justice launched its '2022 Firearms Dashboard Portal,' which was supposed to 'improve transparency and information sharing for firearms-related data,' according to a statement released by California Attorney General Rob Bonta's office Tuesday. However, it was not supposed to include the personal information of concealed carry weapon permit holders.

"The information exposed included names, birth dates, gender, race, driver's license numbers, addresses, and criminal history, Bonta said. Data from several dashboards was also impacted, including Assault Weapon Registry, Handguns Certified for Sale, Dealer Record of Sale, Firearm Certificate Safety, and Gun Violence Restraining Order dashboards."

21.   §26150(a)(1) calls for proof that an applicant "is" of Good Moral Character; not that they always been of good moral character.[4] Plaintiff's point is that he has been denied because of conduct occurring fifty some years and not on account of his present character.

22. Plaintiff is a member of The State Bar of California who is and has been in good standing since admission and to be admitted to the bar he had to pass and did pass a good moral character investigation. See *California Business and Professions Code* § 6060(b)[5].

23. Plaintiff has never been arrested as an adult and does not even recall his last moving violation.  An incident did occur less than a month after Plaintiff turned 17 and a month before he enlisted in the United States Marine Corps. Plaintiff's recollection is that no charges were pressed. A arrest approximately five months later resulted in a Judge of the Juvenile Court taking testimony from Marine Corps Sergeant Hawkins and family members, the Judge considering

--------------------------------

[4]"When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following: (1) The applicant is of good moral character." §26150(a)(1)

[5] "To be certified to the Supreme Court for admission and a license to practice law, a person who has not been admitted to practice law in a sister state, United States jurisdiction, possession, territory, or dependency or in a foreign country shall . . .(b) Be of good moral character."

the Probation Officer's report, social study, and recommendation, and the Judge dismissing the case and releasing Plaintiff to the Marines.   The Marines did nothing but send Plaintiff to the duty station for which he had travel orders when the incident occurred.

24.   In 1969 Plaintiff applied for a position as a deputy with the Los Angeles Sheriff's Department (LASD). A pre-employment resulted in Plaintiff being invited to Los Angles for assignment to an Academy class. All of which suggests that LASD, which did its investigation much, much closer to the times in question, five versus fifty years, was not unduly concerned with Plaintiff's good moral character.

25. "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

26. "[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010).

27. Even in the face of "the problem of handgun violence in this country,…the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636.

28. "The upshot of [Heller and McDonald] is that there now exists a clearly-defined fundamental right to possess firearms for self-defense within the home." *United States v. Masciandaro,* 638 F.3d 458, 467 (4th Cir. 2011).

29. Local governments are bound by the Second Amendment. *McDonald*, 561 U.S. at 790; *Nordyke v. King*, 681 F.3d 1041, 1044 (9th Cir. 2012).

30. "Under Heller, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Association, Inc. v. Kevin V. Bruen*, 597 U.S. ___,142 S.Ct. 2111, 2117 (2022). The conduct being regulated here, the carrying of a concealed pistol, is indisputably covered by that plain text.

31. "In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. **Only** if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961)." *New York State Rifle & Pistol Association, Inc. v. Kevin V. Bruen*,

Case 8:23-cv-00813-GW-DFM   Document 1   Filed 05/09/23   Page 13 of 25   Page ID #:13

597 U. S. ___, 142 S.Ct. 2111, 2126 (2022). (Emphasis added.)

32.   The government has yet to demonstrate that its regulation of Plaintiff's conduct "is consistent with this Nation's historical tradition of firearm regulation. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command." *Bruin, Id.* If Defendants fail to pass the National historic tradition test, §25400 should be declared to violate the Second Amendment and its enforcement should be enjoined.

**Good Moral Character**

33.   §26150(a)(1)'s Good Moral Character (GMC) requirement must also pass the National historic tradition test or be found unconstitutional since it regulates conduct protected by the Second Amendment.  is consistent with the Nation's historical tradition, the requirement may not be used to regulate protected conduct. The public carrying of a concealable weapon most clearly falls within the Second Amendment's "unqualified command" and the GMC requirement should be declared in violation of the Second Amendment and be enjoined.

34.   The GMC requirement also violates due process and equal protection clauses due to the lack of any statutory definition of GMC giving rise to the

exercise of unfettered discretion by licensing authorities to choose what is and is not GMC.  Especially where a statute burdens a Constitutionally protected right, due process and equal protection call for a statute's definition to be determined by the Legislature, as Defendant Attorney General proposes.

35. See Defendant Attorney General's Legal Alert.  *Legal Alert,* OAG-2022-02, Office of Attorney General, California Department of Justice, p. 2 (June 24, 2022). "The investigation into whether an applicant satisfies the 'good moral character' requirement should go beyond the determination of whether any 'firearms prohibiting categories: apply, such as a mental health prohibition or prior felony conviction." **"Good moral character" is a distinct question that requires an independent determination."** I.e., GMC requires a determination derived from a highly subjective evaluation.

36.  Somehow the Attorney General managed to ignore *Bruen's* concern with licensing regimes that "appear to contain only "narrow, objective, and definite standards" guiding licensing officials, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), rather than requiring the "appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell v. Connecticut*, 310 U.S. 296, 305, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)—features that typify proper-cause standards like New York's"

may-issue regime.[6] The Attorney General certainly didn't hesitate to encourage Police Chiefs and Sheriffs to exercise their unbound judgment to find reasons to deny a Constitutionally protected right.

37.   The same lack of contextual definition of GMC denies similarly situated persons equal protection. A citizen residing in one county may be denied a license while a similarly situated resident of another county is approved for a CCW, with the only material difference being that their county's res[ective

_____

[6] "To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes, under which "a general desire for self-defense is sufficient to obtain a [permit]." *Drake v. Filko*, 724 F.3d 426, 442 (CA3 2013) (Hardiman, J., dissenting). Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent "law-abiding, responsible citizens" from exercising their Second Amendment right to public carry. *District of Columbia v. Heller*, 554 U.S. 570, 635, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens." *Ibid.* And they likewise appear to contain only "narrow, objective, and definite standards" guiding licensing officials, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), rather than requiring the "appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell v. Connecticut*, 310 U.S. 296, 305, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)—features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, S.Ct. at 2329, Slip 20, n. 9.

sheriffs differ on judging some of those identical material factors. The standards for issuance of a state-wide license should be uniform throughout the state and the right to exercise a Constitutionally protected right should not turn on which county a citizen happens to reside.

38. There is some evidence that California's "may-issue" licensing regime was intentionally cobbled together in the Mulford Act for the purpose of enabling police chiefs and sheriffs to exercise broad discretion and discriminate against Black Americans. See Brandon Harris, "The Most Important Legacy of the Black Panthers", *The New Yorker* (September 5, 2015). [7]

39. Before Defendants attempt to meet the Nation's historic tradition standard, it would help if GMC was defined as the term is here used.

40. While it may be tempting to confuse GMC with "law-abiding", the protection of the Second Amendment extends to other members of the community than the so-called law abiding. See *United States of America v. Perez-Gallan*, 2022 WL 16858516, *1, *17 (W.D. Tex. 11/10/2022), citing

_____

[7] "Less than a year after the armed Panther Patrols emerged, the California governor Ronald Reagan signed the Mulford Act, put forward by the California State Assembly with the explicit desire to prevent the Panthers from carrying loaded firearms in public."

*Heller at* 580, and rejecting the prosecution's argument that the protection of the Second Amendment was limited to a "law-abiding citizen."

41. "(T)he crux of Heller's reasoning—that the Second Amendment enshrined an individual right—highlights that "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all *members of the political community*, not an unspecified subset." Heller, 554 U.S. at 580 (emphasis added in *Perez-Gallen*.) **So the Heller Court's "determination of a matter of law pivotal to its decision" defined "the people" as "members of the political community," not "law-abiding, responsible citizens."** (Emphasis added.) *Id.,* citing *Heller* and Bryan A. Garner, et al., *The Law of Judicial Precedent* 44 (2016) (quoting Dicta, Black's Law Dictionary 849 (Bryan A. Garner ed., 10th ed. 2014).

**Psychological Testing.**

42. Firstly, what the OCSD has called "the Psychological examination portion of the CCW process" is not authorized by law.   §26190(f)(1) only sets a fee, albeit a forbidden fee for the exercise of a Constitutional right, to be charged should a licensing authority sometime be authorized to require testing, but there is no such enabling law.

43.  Secondly, if psychological testing was authorized by §26190(f)(1), as OCSD has claimed, it regulates conduct covered by the plain text of the

Second Amendment and is that conduct is therefore presumedly Constitutionally protected. Consequently, Defendants must establish the existence of a National historic tradition of requiring psychological testing to regulate the right to keep and bear arms in public. They have not and, Plaintiff believes, based on filings by Defendant Attorney General in other United States District Courts, they cannot.

44. Psychological evaluations are used as fishing expeditions to find ways to justify the denial of applications for lack of proof of Good Moral Character, when OCSD is really looking to justify denials for lack of suitability to carry a concealed weapon.

45. OCSD claims that psychological testing is not done to determine mental fitness but identify outward indications or history of psychological problems that might provide cause to deny licensing on the ground that the applicant is unfit to carry a concealed firearm. [8]   I.e., the Legislature set its

_____

[8]"The purpose of any psychological testing is intended only to identify any outward indications or history of psychological problems that might render the applicant unfit to carry a concealed firearm. This testing is not intended to certify in any other aspect that the applicant is psychologically fit. If it is determined that the applicant is not a suitable candidate for carrying a concealed firearm, the applicant shall be removed from further consideration (Penal Code § 26190(f)(1))." *Orange County SD policy Manual*, Policy 218.4-4(a).

imprimatur on four requirements for licensure, of which Good Cause and GMC were two, but Defendants determined that they should demand more for issuance.   Hence, Defendants determined to require that an applicant be ofund "suitable" to carry a concealed weapon.  Such an usurpation of the power of the legislative denies due process of law.

46. **"A state may not impose a charge for the enjoyment of a right granted by the Federal Constitution"** (*Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943) (Emphasis added.)  This is just what the Sheriff did and is doing for a third time.

47. OCSD's denial of a right of appeal in its letter of February 10, 2016, is a clear denial of due process.  The denial was especially egregious on account of OCSD's refusal to elaborate on the reasons that "(t)he requirement of good moral character had not been satisfied".  There was no right to know the real reasons for denial of a Constitutional right and if they were known, there was no right of appeal. This is an outrageous denial of due process.

**FIRST CLAIM FOR RELIEF**
**Violation of the Second and Fourteenth Amendments (42 U.S.C. 1983)**
***California's firearm's licensing violates the Second and Fourteenth Amendments to the United States Constitution.***

48. Plaintiff incorporates by reference each paragraph set forth above.

49. The Second Amendment of the United States Constitution guarantees "the right of the people to keep and bear arms" and that right "shall not be infringed." U.S. CONST., amend. II.

50. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Konigsberg*, 366 U.S. at 50, n. 10, 81 S.Ct. 997." *Bruen*, S.Ct. at 2126.

51.  The plain text of the Second Amendment indeed covers carrying a concealable pistol in public for self-defense, which is the very conduct forbidden Plaintiff by California, and so California's regime presumptively violates the Second Amendment and the Fourteenth Amendment.

52. Defendants have not and cannot justify their presumptive violation of the United States Constitution under the Nation's historic tradition.

### SECOND CLAIM FOR RELIEF
### Violation of the Second Amendment
### *Fees for the exercise of a right protected by the Second Amendment*

53. Plaintiff incorporates by reference each paragraph set forth above.

54. "A state may not impose a charge for enjoyment of a right granted by the Federal Constitution." *See Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943), where a city ordinance requiring the obtainment of a license by Jehovah's Witnesses to distribute literature was struck as a tax on the right of freedom of religion. Here defendants would tax rights protected by the Second Amendment.

55. "The constitutional right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.' *McDonald*, 561 U.S. at 780, 130 S.Ct. 3020 (plurality opinion). We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense." *Bruen,* S.Ct. 2156.

### THIRD CLAIM FOR RELIEF
### Violation of Fifth Amendment Due Process
***The denial of a right of appeal & the requirement of psychological testing deny Due Process***

56.  Plaintiff incorporates by reference each paragraph set forth above.

57. OCSD's denial of a right of appeal violates Due Process. U.S. CONST., amend. V.

58. Requiring the Plaintiff or any applicant to submit to psychological examination is a violation of due process.

59. Plaintiff had every right to refuse to agree to the demands the psychologist made on him. To do otherwise violated due process.

60. California's firearm licensing regime is so vague and ambiguous it subjects applicants, and has subjected Plaintiff, to arbitrary and capricious treatment, and therefore violates Due Process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

1. A preliminary injunction enjoining the enforcement of Section 25400 during or after the pendency of this case for carrying during its pendency;

2. A permanent injunction enjoining Defendants and all successors in office from enforcing *California Penal Code* §25400;

2. A declaratory judgment that §§ 25400, 25655, 26150, 21655, and 26190 violate the Second, Fifth, and Fourteenth Amendments of the United States Constitution, and granting the necessary and proper relief this Court deems appropriate, including relief authorized by 28 U.S.C. §§ 2201, 2202;

3. A preliminary and permanent injunction enjoining Defendants and all successors in office from requiring Plaintiff or other CCW applicants to submit to psychological testing.

4. A declaratory judgment that *California Penal Code* §26190(f) does not authorize the Sheriff or any licensing authority to require applicants to undergo psychological testing.

5. Alternatively, if prayer number 4. not be granted, a declaratory judgment that *California Penal Code* §26190(f) violates the Second Amendment and the Due Process and Equal Protection clauses of Fifth Amendment as they are applied to the States by the Fourteenth Amendment of the United States Constitution.

6. A preliminary and permanent injunction enjoining Defendants and all successors in office from violating *California Penal Code* §26205.

7. A declaratory judgment that OCSD has violated *California Penal Code* §26205 in regard to Plaintiff's first, second, and third Applications in doing so has violated the Due Process clause of the Fifth and Fourteenth Amendments.

8. A judgment declaring that the Sheriff and OCSD violated *California Penal Code* §26205 on Plaintiff's first, second, and third § 26150 application.

10. A preliminary and permanent injunction enjoining Defendants and all successors in office from enforcing *California Penal Code* §§26150(a)(1) and 21655(a)(1), including any relief authorized by 42 U.S.C. § 1983;

11. A declaratory judgment that *California Penal Code* §§26150(a)(1) and 21655(a)(1) violate the Second and Fourteenth Amendments of the United States Constitution;

12. A preliminary and permanent injunction enjoining Defendants and all successors in office from enforcing *California Penal Code* §§26150(a)(2) and 21655(a)(2), including any relief authorized by 42 U.S.C. § 1983;

13. A declaratory judgment that *California Penal Code* §§26150(a)(2) and 21655(a)(2) violate the Second and Fourteenth Amendments of the United States Constitution;

14. Nominal damages according to proof, including, but not only, damages incurred on all three applications and for the leaking of information regarding applications of at least $50,000;

15. Costs and attorney fees, including those authorized by 42 U.S.C. § 1988 and *California Code of Civil Procedure* §1021.5; and

//

//

//

16. Any other relief as this Court, in its discretion, deems just and appropriate.

Dated this 9th day of May, 2023

_____
RICHARD J. KOPPEL
*Pro Per*