RICHARD J. KOPPEL-SBN 94045
32 Bellvista
Lake Forest, CA 92610
Tel.: (949) 690-7242
Email: richardkoppel16@att.net
Pro Se

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| RICHARD J. KOPPEL,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of the State of California, DON BARNES, in his official capacity as the Sheriff - Coroner of Orange County, State of California, and DOES 1 – 10.<br><br>Defendants. | Case No.: 8:23-cv-00813-GW-DFM<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND DECLARATION THAT:<br><br>I. CAL. PEN. CODE §25400, THE CARRYING A CONCEALED WEAPON LAW, IS UNCONSTUTIONAL AND SHALL NOT BE ENFORCED,<br><br>II. CAL. PEN. CODE §26150(a)(1), THE REQUIREMENT OF GOOD MORAL CHARACTER IS UNCONSTITUTIONAL AND SHALL NOT BE ENFORCED, |

III.  IF FOUND TO AUTHORIZE PSYCHOLOGICAL TESTING, CAL. PEN. CODE §26190(f) IS FACIALLY UNCONSTITUTIONAL AND DEFENDANTS ARE ENJOINED FROM ITS ENFORCEMENT,

IV. IF NOT FOUND TO AUTHORIZE DEFENDANT SHERIFF TO REQUIRE PSYCHOLOGICAL TESTING, CAL. PEN. CODE §26190(f) IS UNCONSTITUTIONAL AS APPLIED AND DEFENDANTS ARE ENJOINED FROM ENFORCING IT TO REQUIRE TESTING,

V.  CAL. PEN. CODE §26205 IS TO BE READ AS THE DATE OF APPLICATION IS THE DATE AN APPLICANT PROVIDED OR WAS READY TO PROVIDE THEIR APPLICATION TO THE LICENSING AUTHORITY, AND

VI. CAL. PEN. CODE §26150 IS TO BE DECLARED UNCONSTITUTIONAL AND DEFENDANTS ARE ENJOINED FROM ENFORCING IT,  THE  WORD "MAY" IS TO BE CONSTRUED  TO HAVE THE SAME PEREMPTORY MEANING OF  "SHALL" AND "MUST"AND DEFENDANTS ARE ENJOINED FROM CONSTRUING IT OTHERWISE.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

[Filed concurrently with 1) Notice of Motion and Motion, 2) Declaration of Richard J. Koppel, and 3) [Proposed] Order.]

U.S. Magistrate Judge Douglas F. McCormick
Courtroom: 6B
Date of Hearing:  09/12/2023
Time of Hearing: 10:00 a.m.
Complaint Filed: 05/09/2023

//

//

//

//

//

//

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................... 1

II. CALIFORNIA DENIES OPEN AND CONCEALED CARRY IN

PUBLIC PLACES, INCLUDING PLAINTIFF'S FRONT YARD .............. 3

III. THE REQUIREMENT OF GOOD MORAL CHARACTER ................. 4

    A. The Legislature Failed To Define Good Moral Character 4

    C. History Behind California's "May-Issue" Licensing And

    GMC. ................................................................................ 6

    D. Denial Of The Right Of Appeal Denied Due Process........ 8

IV. PSYCHOLOGICAL TESTING ................................................. 9

    A. Licensing Authorities Are Not Empowered to Demand

    Testing. .............................................................................. 9

    B. Why Psychological Testing Was Done Twice But Not The

    Third Time........................................................................... 9

V. THE SHERIFF AND OCSD ARE IN VIOLATION OF §26205........... 10

VI. ADDITIONAL LAW AND DISCUSSION......................................... 10

A. Due Process ...................................................................... 10

1. OCSD failed to provide plaintiff a meaningful

opportunity to be heard. .................................................... 10

2. Discretionary Licensing regimens are disfavored. ....... 11

B. This "May-Issue" Law Should Be Construed "Shall-Issue".

............................................................................................ 13

1. The canon of constitutional-doubt calls for section 26150

to be construed as "shall-issue"......................................... 13

2. The Constitutional Avoidance Doctrine That Courts

should interpret the Constitution only when "strictly

necessary," applies. ........................................................... 13

3. "May" is reasonably susceptible to construction as

"shall". ............................................................................... 14

VII. LEGAL STANDARDS FOR A PRELIMINARY INJUNCTION ...... 15

A. Plaintiff's Claims Are Likely To Succeed On The Merits.

............................................................................................ 15

1. The Due process claims are likely to succeed................ 16

2. Second Amendment claims are likely to succeed.......... 17

3. More than just "model citizen[s]" enjoy the right to bear arms. ...................................................................... 21

B. Plaintiffs Will Suffer Irreparable Harm ............................ 22

C. Balancing the Equities is Sharply in Plaintiffs' Favor ..... 23

D. Preliminary Injunctive Relief is in the Public Interest ..... 23

IV. CONCLUSION ....................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.1998) ................................ 9, 16

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011) ................................................................................................ 23

Also see *United States v. Hansen* 599 U. S. ____ , slip opinion 16-17(June 23, 2023). ......................................................................................... 14

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ..................................................................................... 15

Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 348 (1936) (Brandeis, J., concurring). ....................................................................................... 13

Att'y Gen. v. Del. & Hudson Co., 213 U.S. 366, 407 (1909) ..................... 13

*Cantwell v. Connecticut*, 310 U.S. 296, 305, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) ................................................................................................ 12

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................... passim

*Drummond v. Robinson Twp.,* 9 F.4th 217, 226 (3rd Cir. 2021).................. 20

*Duncan v. Becerra (Bonta)*, 265 F. Supp. 3d 1106 (S.D. Cal. 2017)........... 23

*Elrod v. Burns*, 427 U.S. 347, 373 (1976). ................................................ 3, 22

*Ezell v. Chicago*, 651 F.3d 684, 700 (7th Cir. 2011)...................................... 22

*Hager v. Reclamation District*, 111 U. S. 701, 708, (1884 )........................ 11

*Hayes v. County of Los Angeles*, 99 Cal. 74, 80, 33 P. 766 ......................... 15

*Herman & MacLean v. Huddleston*, 9 U.S. 375, 389-90 (1983). ................. 6

Hurtado v. California, 110 U.S. 516, 536 (1884) ......................................... 11

*Jennings v. Rodriguez*, 583 U.S. 830 (2018) ................................................ 14

*Kim Ho Ma v. Ashcroft,* 257 F.3d 1095, 1105 n. 15 (9th Cir.2001)............... 5

*Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)........... 23

Kobach v. U.S. Election Assistance Comm'n 6 F. Supp. 3d 1252, 1263-1264

   (D. Kan. 2014), ........................................................................................ 5

*Kolender v. Lawson*, 461 U.S. 352 (1983) ..................................................... 4

*Marchant v. Pa. R.R.,* 153U.S.380, 386, (1894)........................................... 11

*McDonald v. City of Chicago*, 561 U.S. 742 (2010). ................... 3, 17, 21, 22

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) .......................... 22

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997); ........... 22

*New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111,

   2129-30 (2022)................................................................................... passim

*People v. Strider* 177  Plaintiff's front yard is unfenced. ¶Cal.App.4th 1393,

   1407, 100 Cal. Rptr. 3d 66 (Cal. Ct. App. 2009)........................................ 4

*People v. Supervisors*, 68 N.Y. 114, 119 (1877). ........................................ 15

*Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). ......................... 24

*Rescue Army v. Mun. Ct. of L.A.,* 331 U.S. 549, 568 (1947)...................... 14

*Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir 2013)....................... 23

*Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d

162 (1969) .............................................................................................. 12

*Smith v. Goguen*, 415 U. S. 566, 574(1974). .................................................. 4

*United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916) .......................... 13

*United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023), cert. granted, No.

22-915, 2023 WL 4278450 (June 30, 2023).......................................... 21

*USA v. Daniels,* No. 22-60596, Slip 1,7 (5th Cir. 2023). ............................ 21

*Valle del Sol Inc. v. Whitting*, 732 F.3d 1006, 1029 (9th Cir. 2013)............ 23

*Winter v. Nat. Res. Def. Council, Inc*., 55 U.S. 7, 20 (2008)....................... 15

## OTHER AUTHORITIES

Ferguson, III, C. "Agency Discipline Proceedings – The Preponderance of

Clear and Convincing Evidence." *The Florida Bar Journal*, vol. 72 no, 1,

pp 71 (Jan. 1998), https://www.floridabar.org/the-florida-bar-

journal/agency-discipline-proceedings-the-preponderance-of-clear-and-

convincing-evidence/ ............................................................................... 6

*Black's Law Dictionary*, 4th Ed. Rev. 13th Reprint-1975 ........................... 14

*Constitutional Research Service Reports*, The Constitutional Avoidance
Doctrine: The Constitutional-Doubt Canon (Part 3 of 3), page 1,
https://crsreports.congress.gov LSB10722 (March 29, 2022). .................. 14

Morgan,Thadeus, "The NRA Supported Gun Control When the Black
Panthers Had the Weapons", *History.Com*, *History Classics* (Aug. 31,
2018), https://www.history.com/news/black-panthers-gun-control-nra-
support-mulford-act ...................................................................... 7

## TREATISES

11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d
ed. 1995).......................................................................................... 22

## STATUTES

§25655.............................................................................................. 4

§25850.............................................................................................. 4

§26010.............................................................................................. 4

§26150......................................................................................... 4, 7, 8, 13

§26150 (a) ...................................................................................... 7

§26155.............................................................................................. 4

§26190(f)..............................................................................2, 9, 24

§26190(f)(1) ....................................................................................... 2

§26205 ............................................................................................... 10

Mulford Act ................................................................................ 6, 7, 8

*Official Code of Georgia Annotated* 1-3-3 (2010) §(10)............................. 15

## CONSTITUTION

*U.S. Const.* Amend. II ........................................................................ 3

*U.S. Const.* Amend. XIV Sec. 1 .................................................. 3, 16, 17, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff, a 75-year-old retired attorney and longtime Orange County resident, was twice denied a Carry Concealed Weapons license (CCW) for lack of proof of Good Moral Character (GMC). [Declaration of Richard J. Koppel, ¶1. Citations hereafter to a ¶ are to the Declaration of Richard J. Koppel.] In addition to being denied a CCW he was denied a right of appeal. ¶2. He was refused any explanation for why good moral character had not been proven, , besides a question suggesting that it was related to an incident with a home improvement contractor. ¶3.  The police report, a civil incident report, fails to indicate a lack of good moral character. Exhibit B to ¶ 3.

Prior to the denial of the first two applications, he was required to be tested by OCSD's psychologist. ¶4.  Last year Plaintiff filed a third application, and again OCSD ordered him to see another one of OCSD's psychologists. ¶5.  Plaintiff immediately questioned OCSD's authority to require testing.  ¶6. The new psychologist insisted that the Plaintiff execute prejudicial documents and that the testing be done online, including conducting face-to-face evaluation via teleconferencing. ¶¶ 7 & 8.  Because Plaintiff refused those demands, she refused to do the evaluation, and OCSD

unilaterally chose to treat Plaintiff's application "withdrawn" without giving Plaintiff notice of its action. ¶ 9.

Plaintiff cannot understand how OCSD could have found that proof had not been made of GMC unless it mis-applied burdens of proof. See § II.B.1. below. Regardless, the GMC requirement is plainly violative of the Second Amendment both facially and as applied.  The psychological testing requirement violates the Constitution on at least two counts. The section claiming to enable referrals does no such thing, but if it did regulate conduct covered by the plain text of the Second Amendment. §26190(f)(1) then it is presumptively violative of the Constitution. The carrying of arms is a core right the regulation of which indisputably gives rise to a presumption of the violation of the Second Amendment.

California's multi-faceted regimen bars any carry, either concealed or open, loaded or unloaded, unless a citizen is issued a CCW license

California's CCW licensing scheme being presumedly violative of the Second Amendment., the burden falls squarely on the government to justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2129-30 (2022).  Other key precedents of the United States Supreme Court on which Plaintiff relies are

*District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

Moreover, because injuries to constitutional rights are considered irreparable "for even minimal periods of time," and because the remaining preliminary injunction factors are decisively in Plaintiffs' favor, Plaintiff request the Court preliminarily enjoin further enforcement of the *California Penal Code* denying plaintiff his constitutional rights, including his Second Amendment right to keep and bear arms without infringement and the right of due process of law as those rights are incorporated against the states by the Fourteenth Amendment of the Constitution of the United States. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.  *U.S. Constitution.* Amend. II.

## II. CALIFORNIA DENIES OPEN AND CONCEALED CARRY FOR IN PUBLIC PLACES, INCLUDING PLAINTIFF'S FRONT YARD.

§25400 criminalizes carrying a concealed weapon in public, but there are exemptions. The only conditional exemption that might apply to Plaintiff is the one for persons with CCW licenses obtained under §26150 or §26155 . §25655. §26155 has no relevance here since the City of Lake Forest does not

have a municipal police department and does not issue CCWs. Nor is open unloaded and exposed public carry allowed.  §25850 criminalizes loaded public carry without a CCW. §25850 does not apply to CCW licensees per §26010.  California holds that even a fenced yard may be considered "'public' unless the homeowner has fortified it with multiple security mechanisms." *People v. Strider* 177 Cal.App.4th 1393, 1407, 100 Cal. Rptr. 3d 66 (Cal. Ct. App. 2009).  Plaintiff's front yard being unfenced he is barred from exercising his Second Amendment right of self-defense on his own property.

## III. THE REQUIREMENT OF GOOD MORAL CHARACTER

### A.  The Legislature Failed To Define Good Moral Character

Nowhere is GMC defined by California firearm licensing law.  "[T]he more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine -- the requirement that a **legislature** establish minimal guidelines to govern law enforcement.'" *Kolender v. Lawson*, 461 U.S. 352 (1983) quoting *Smith v. Goguen,* 415 U. S. 566, 574(1974). [Emphasis added.] Neither the Attorney General, his Department of Justice, or the Sheriff of a county, but the Legislature.

"Circuit courts have concluded that **the canon of constitutional avoidance trumps Chevron deference** owed to an agency's interpretation of a statute." Kobach v. U.S. Election Assistance Comm'n 6 F. Supp. 3d 1252, 1263-1264 (D. Kan. 2014), quoting *Kim Ho Ma v. Ashcroft,* 257 F.3d 1095, 1105 n. 15 (9th Cir.2001) "'*Chevron* principles are not applicable where a substantial constitutional question is raised by an agency's interpretation of a statute it is authorized to construe.'". The impact of a constitutional question is below discussed in regard to the Canons of Constitutional-Dispute and Avoidance.

**B.  The GMC Requirement Was Unconstitutional As Applied**

**1. OCSD had the burden of introducing persuasive evidence proving that Plaintiff is not of GMC.**

One must wonder if the Department applied the wrong burden of proof because it believed there was no right to publicly carry for self-defense and a CCW license was a privilege.  Hence it placed the burden of persuasion on the applicant along with the wrong standard of proof when it determined that proof had not been made that the applicant "is" of good moral character.

**2. Clear and convincing apples to important rights, such as a Constitutional right.**

"The U.S. Supreme Court has held that the higher, intermediate, clear and convincing standard is reserved for cases "where particularly important individual interests or rights are at stake . . ." Ferguson, III, C. "Agency Discipline Proceedings – The Preponderance of Clear and Convincing Evidence." *The Florida Bar Journal*, vol. 72 no, 1, pp 71 (Jan. 1998), https://www.floridabar.org/the-florida-bar-journal/agency-discipline-proceedings-the-preponderance-of-clear-and-convincing-evidence/ citing *Herman & MacLean v. Huddleston*, 9 U.S. 375, 389-90 (1983).a

Evidence before the OCSD in all three applications plainly established that the Plaintiff was, if not a so-called "law-abiding citizen" then he is at least of the same character as is an ordinary member of the polity. A high school dropout, he served with the Marines from 1964 to 1968.

When he applied to LASD in 1969 his arrest record was investigated and cleared. He passed a good moral character for admission to the Bar of the State of California in 1980. He has been married for 42 years. During that marriage he and his wife raised two children; a paralegal and an M.D./Ph.D. ¶ 9.a. & b.

**C. History Behind California's "May-Issue" Licensing And GMC.**

The history of California weapons licensing begins with the 1967 Mulford Act and Governor Ronald Reagan's and the California legislative

reaction to the Black Panthers. "The law was part of a wave of laws that were passed in the late 1960s regulating guns, especially to target African-Americans," says Adam Winkler, author of *Gunfight: The Battle Over the Right to Bear Arms*. " Morgan,Thadeus, "The NRA Supported Gun Control When the Black Panthers Had the Weapons", *History.Com*, *History Classics* (Aug. 31, 2018), https://www.history.com/news/black-panthers-gun-control-nra-support-mulford-act

Whatever the reasons for its passage, the Mulford Act gave California a "may-issue" firearm licensing scheme. Even if proof is made of all the requirements of §26150(a), the Sheriff still has discretion as to whether he or she accept or denies a a CCW.

(a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county **may issue** a license to that person upon proof of all of the following:

(1) The applicant **is** of good moral character.

§26150 (a) with paragraphs (2), (3), and (4) along with subsection (b), as they have been proven and are not here relevant. [Emphasis added.]

Some will argue that California's CCW regimen wasn't founded on racism, but they can't cogently argue that given its "may issue" language

and the lack of any objective guidelines, or any guidelines, for determining GMC, that §26150 isn't well suited for seeing that only "the right people" receive CCW licenses.

Others may shamelessly assert that the racist laws of some of the colonial period and southern states regarding Indigenous Americans, slaves, and freed slaves to be analogs justifying the Mulford Act. I trust that such a shameful debate will not be made here.

**D. Denial Of The Right Of Appeal Denied Due Process**

In its February 10, 2016, letter, OCSD didn't just deny the Plaintiff's application and GMC, it denied any right of appeal.   "Applicants and permit holders are not entitled to an appeal of this decision nor is there any property right to possess a CCW license," "circumstances do not satisfy the requirements listed in Penal Code 26150" and "[t]he requirement of good moral character was not satisfied."  OCSD further then denied Plaintiff the right to a meaningful hearing by refusing to explain to Plaintiff how it came to conclude that lack of proof.

Plaintiff was entitled to be informed during the application process of the reasons OCSD had misgivings as to his gmc, and here OCSD withheld them during and after the denial decision was made and Plaintiff had no right of appeal.  See *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d

Cir.1998).  "At the core of procedural due process jurisprudence is the right to **advance notice** of significant deprivations of liberty or property and to a meaningful opportunity to be heard." [Emphasis added.]   Deprivation of one's liberty to exercise a Constitutionally guaranteed right has to be a "significant deprivation of liberty or property".

## IV. PSYCHOLOGICAL TESTING

### A.  Licensing Authorities Are Not Empowered to Demand Testing.

OCSD claimed that its request for psychological testing was authorized by §26150, but the section fails to do so.  §26190(f) sets the amount of fees which may be charged for psychological testing but falls short of authorizing requests for those services.  Legislation that was never enacted

### B.  Why Psychological Testing Was Done Twice But Not The Third Time.

On all three applications I was referred to OCSD's psychologist for testing.  I was told that such was pursuant to *California Penal Code* section 26190(f)(1).  The first and second time I complied, but by the time of the third referral I had grown wary of the conditions under which testing was done.  I was willing to allow testing, subject to a reservation of rights to contest the requirement's legality, but the appointed psychologist refused to

test me unless I signed two consent forms. ¶ 7.   When Sergeant Sanchez asked if I could go to the doctor's West Los Angeles office to avoid the teleconferencing problems (key counting and allowing my computer to be searched), I readily agreed. ¶ 8.

This brings up the question of where the third application is pursuant to OCSD "process".  OCSD is treating it as being "withdrawn," though I never withdrew it. To date neither Defendant Sheriff Barnes nor his OCSD have even attempted to explain why or how it was withdrawn, despite the letter of 12 May 2023 making it clear that it was not withdrawn. ¶ 7.

## V. THE SHERIFF AND OCSD ARE IN VIOLATION OF §26205

The application submitted on July 12, 2022, requires notice of acceptance of denial to be given withing 90 days of application or 30 of receipt of a background check, whichever is latest.  Over a year has past since submission. This is a patent violation of Due Process. §26205.

## VI. ADDITIONAL LAW AND DISCUSSION

## A. Due Process

**1. OCSD failed to provide plaintiff a meaningful opportunity to be heard.**  Here we have a patent case of denial of procedural due process where the Sheriff's Department advised Plaintiff that he had no right to appeal the denial of his CCW application.

"It is sufficient to observe here, that '[B]y "due process" is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, **it must give them an opportunity to be heard respecting the justice of the judgment sought**.'" *Marchant v. Pa. R.R.,* 153U.S. 380, 386, (1894), quoting *Hager v. Reclamation District*, 111 U. S. 701, 708, (1884 ). [Emphasis added.] Here, where the Plaintiff applicant was never told the reasons for denial, there was no meaningful opportunity to be heard. Nor could he be fairly expected to prove good moral character, when there is no definition to be found in the Penal Code.  That lack of "'narrow, objective, and definite standards' guiding licensing officials . . .  requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion'" is just what concerned the *Bruen* Court about may-issue laws. *Bruen* at 2138, n. 9.

**2. Discretionary Licensing regimens are disfavored.**  In Hurtado v. California, 110 U.S. 516, 536 (1884)  the United States Supreme Court instructs us of its condemnation of "arbitrary exertions of power" and at 537 that legal proceedings enforced by public authority "sanctioned by age and custom, or newly devised in the discretion of the legislative power, in

furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law." See *Bruin* at 2138. N.9, where the Court looks favorably on regimes that:

"appear to contain only 'narrow, objective, and definite standards' guiding licensing officials, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' *Cantwell v. Connecticut*, 310 U.S. 296, 305, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) —features that typify proper-cause standards like New York's which were held Unconstitutional."

Also see Justice Kavanaugh's *Bruen* concurrence. "As the  Court explains,   New  York's  outlier  may-issue  regime  is  constitutionally problematic because it grants open-ended discretion to licensing officials . . ." (*Bruen, 2162 (concurring opinion, Justice Kavanaugh*) and  the "may-issue" states, "the 6 States including New York potentially affected by today's decision may continue to require licenses for carrying handguns for self-defense **so long as those States employ objective licensing requirements like those used by the 43 shall-issue States."** Id. at 2162. [Emphasis added]

§26150, a law "requiring the appraisal of fact, the exercise of judgement, and the formation of an opinion" of GMC, without any objective guidance, is

plainly Unconstitutional.

**B. This "May-Issue" Law Should Be Construed "Shall-Issue".**

**1. The canon of constitutional-doubt calls for section 26150 to be construed as "shall-issue".**

 "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." United States v. Jin Fuey Moy, 241 U.S. 394, 401 (1916). "When the validity of an act . . . is drawn in question, and even if a serious doubt of constitutionality is raised . . . [the Court] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 348 (1936) (Brandeis, J., concurring).  "[W]hen the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is our plain duty to adopt that construction which will save the statute from constitutional infirmity." Att'y Gen. v. Del. & Hudson Co., 213 U.S. 366, 407 (1909)"

**2. The Constitutional Avoidance Doctrine That Courts should interpret the Constitution only when "strictly necessary," applies.**

The fundamental principle of the Constitutional Avoidance Doctrine is a federal court should interpret the Constitution only when it is a "strict necessity." *Rescue Army v. Mun. Ct. of L.A.,* 331 U.S. 549, 568 (1947).  "The Constitutional Avoidance Doctrine . . . is a set of rules the Supreme Court has developed to guide federal courts in disposing of cases that raise constitutional questions in order to minimize tensions that arise when an unelected federal judiciary sets aside laws enacted by Congress or state legislatures." *Constitutional Research Service Reports*, The Constitutional Avoidance Doctrine: The Constitutional-Doubt Canon (Part 3 of 3), page 1,  https://crsreports.congress.gov LSB10722 (March 29, 2022).  "When a 'serious doubt' is raised about the constitutionality of an act of Congress 'it is a cardinal principal that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided'" (Citations omitted*.) Jennings v. Rodriguez*, 583 U.S. 830 (2018).  Also see *United States v. Hansen* 599 U. S. ____ , slip opinion 16-17(June 23, 2023).

**3. "May" is reasonably susceptible to construction as "shall".**

See *Black's Law Dictionary*, 4th Ed. Rev. 13th Reprint-1975 for the proposition that "courts not infrequently construe "may" as "shall" or "must" to the end that justice may not be the slave to grammar."

Whenever the public interest or individual rights call for its exercise – the language used though permissive in form is in fact peremptory. *Hayes v. County of Los Angeles*, 99 Cal. 74, 80, 33 P. 766. "Matters of public concern are those which can 'be fairly considered as relating to any manner of political, social, or other concern to the community." Where the public interest or private right requires the thing should be done, then the word "may" is generally construed to mean the same as "shall". *People v. Supervisors*, 68 N.Y. 114, 119 (1877).

"'May' ordinarily denotes permission and not command. However, where the word as used concerns the public interest of affect the rights of third persons, it shall be construed to mean 'must' or "shall." *Official Code of Georgia Annotated* 1-3-3 (2010) §(10).

## VII. LEGAL STANDARDS FOR A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008)).

**A. Plaintiff's Claims Are Likely To Succeed On The Merits.**

**1. The Due process claims are likely to succeed.**

To successfully establish a prima facie case for a procedural due process violation, a plaintiff must show that: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.1998).

OCSD's denial of a right of appeal and no notice of reasons for the finding of a lack of GMC, especially results of psychological testing, establish a prima facie violation of due process of law

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

U.S. Const. Amend. XIV Sec. 1

If there be any question as to whether substantive due process is here an issue turn to *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "We therefore hold" the Court wrote "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*."

**2. The Second Amendment claims are likely to succeed.**

Carrying for self-defense is a core right**.** This is not a case where there is a question of whether the conduct being protected by the Second Amendment guarantee, since here that conduct is at the very core of the right to keep and bear arms.  Plaintiff is being barred from public carrying concealable weapons both by open carry and concealed carry.

In 2008, the United States Supreme Court held that the Second Amendment protects an individual right, that is not dependent on service in a militia or other associative entity, to own an operable handgun in the home for self-defense. *District of Columbia v. Heller*, 554 U.S. 570 (2008). The *Heller* court described the right to self-defense as the "central component" of the Second Amendment right." *Id*. at 628. Two years later, the Supreme Court deemed this right fundamental, and incorporated against the state governments under the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). The *Heller* court also held that the Second

Amendment protects the right to keep and bear arms "typically possessed by law-abiding citizens for lawful purposes," and found that the handgun is the "quintessential self-defense" weapon. *Heller*, 554 U.S. at 624-25.

Most critically, the *Heller* court established a "text, history, and tradition" framework for analyzing scope of the Second Amendment questions. The court then assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791, and thereafter. Based on that assessment, the Court concluded that the District of Columbia law that prohibited possession of the most commonplace type of firearm in the nation (the handgun) lacked a revolutionary era analog, did not comport with the historical understanding of the scope of the right, and therefore violated the core Second Amendment right. *Id*. at 629.

In June 2022, the Supreme Court reiterated the validity of the historical understanding approach for analyzing scope of the Second Amendment questions and recognized that the Second Amendment protects the right to armed self-defense in public just as much as in the home. *Bruen*, 597 U.S. ___, 142 S. Ct 2111 (2022). The *Bruen* court reiterated that courts may not apply a "means-ends" "interest-balancing" test akin to "intermediate scrutiny" in scope of the Second Amendment cases. Instead, courts must inspect the historical records of the ratification

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

era and then apply analogical analysis to determine whether the modern-day restriction infringes the Second Amendment right.
*See id*. at 2117-18.

The *Bruen* court clarified in crystal-clear language how proper Second Amendment analysis shall be applied:

> "We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Id*. at 2129-30 (citation omitted)."

The *Bruen* court further stated the "test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id*. at 2131. The *Bruen* court also acknowledged that "[w]hile the historical analogies here and in *Heller* are relatively simple to draw, other cases implicating unprecedented societal concerns or

dramatic technological changes may require a more nuanced approach." *Id*. at 2132.

Critically, the *Bruen* court established two guideposts for the historical analysis. First, not all historical data is equally important. "The Second Amendment was adopted in 1791; the Fourteenth in 1868. Historical evidence that long predates either date may not illuminate the scope of the right if linguistic or legal conventions changed in the intervening years." *Id*. at 2136. "[T]o the extent later history contradicts what the text says, the text controls," *Id*. at 2137. Second, rare examples of plausibly analogous laws are insufficient. The government must produce evidence of a "well-established and representative historical analogue" and not an unrepresentative "outlier that our ancestors would never have accepted." *Id*. at 2133 (quoting *Drummond v. Robinson Twp.,* 9 F.4th 217, 226 (3rd Cir. 2021)).

*Bruen* itself clearly illustrates the standard of reasoning. There, the court reasoned that the historical record New York presented failed to establish a sufficiently representative and well subscribed tradition of analogous regulation. That purportedly analogous tradition consisted of three laws from the colonial era, three turn-of-the-18th Century laws, three 19th Century laws, and finally, five-late 19th Century regulations from the Western Territories. *Id*. at 2138-2156.

### 3. More than just "model citizen[s]" enjoy the right to bear arms.

More than just "model citizen[s]" enjoy the right to bear arms. *United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023), cert. granted, No. 22-915, 2023 WL 4278450 (June 30, 2023).  Indeed, *Rahimi* held that citizens accused of domestic violence  still  had  Second Amendment  rights.   It reasoned that when *Heller* and *Bruen* used the phrase "law-abiding," it was just "shorthand" to "exclude from the . . . discussion" the mentally ill and felons, people who were historically "stripped of their Second Amendment rights."  *Id*. at 452.  All others are presumptively included in the Second Amendment's ambit.

*USA v. Daniels,* No. 22-60596, Slip 1,7 (5th Cir. 2023).

### 4. The burden of proof is on the Defendants.

The *Bruen* court also declined to "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," but noted that *Heller* and *McDonald* "point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id*. at 2133. And critically, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

*Id*. at 2127 (emphasis added). To deny a Constitutional right Defendants must do so by clear and convincing proof.

**B. Plaintiffs Will Suffer Irreparable Harm.**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury'." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod*, 427 U.S. at 373); 11A Charles Alan Wright et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). The Ninth Circuit imported the First Amendment's irreparable-if-only-for-a-minute rule to cases involving other rights and has held a deprivation of these rights irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997); *see also Elrod,* 427 U.S. at 373.

A Second Amendment right should be treated no differently. *See McDonald,* 561 U.S. at 780 (refusing to treat the Second Amendment as a second-class right subject to different rules); see also *Ezell v. Chicago*, 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable and having no adequate remedy at law"); and *Duncan v.*

*Becerra (Bonta)*, 265 F. Supp. 3d 1106 (S.D. Cal. 2017) ("Loss of . . . the enjoyment of Second Amendment rights constitutes irreparable injury.")

## C. Balancing the Equities is Sharply in Plaintiffs' Favor.

This factor considers the "balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011). In contrast to Plaintiffs' injury—the denial of their Second Amendment right to keep and bear arms without infringement— Defendants suffer no injury because there is no plausible, identifiable interest that infringing Plaintiffs' constitutional rights serves. Indeed, Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice. . .." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir 2013); *and see Valle del Sol Inc. v. Whitting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law.") (Citations omitted).

## D. Preliminary Injunctive Relief is in the Public Interest

When challenging government action that affects the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). As the Ninth Circuit has clarified, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are

implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Not only are Plaintiffs' rights at stake, but so are the rights of all Californians seeking to engage in exercising their Constitutionally protected right to carry for self-defense. The public equally has an interest in upholding the right of due process.

## IV. CONCLUSION

Proof was made on each application that Plaintiff's is a "law-abiding, responsible citizen", as that term in used in *Heller*, 554 U.S. at 626, of good moral character. Regardless, the GMC requirement is so arbitrary and subject to unbridled discretion that it violates any notion of due process. §26190(f) simply does not authorize OCSD to demand psychological testing and the results of any should be suppressed as fruit of a poisonous tree.  If OCSD's psychologist's opinions were considered, their admissibility would be doubtful under Due Process considerations since Plaintiff had no opportunity to know of, question or explain them. Before even that little consideration may be given, Defendant's must first establish a historic analog to the use of psychologists to deny the right to bear arms.

Dr. Gallivan had no right to require Plaintiff to agree to consent forms and place the integrity of his computer at risk and OCSD had no right to treat the third application as "withdrawn".

The Canons of Constitutional-Doubt Canon and Avoidance urge "may" to be construed peremptorily as "shall" or "must".

Respectfully submitted _____, 2023

_____
/s/
Richard J. Koppel
Pro Se

Certificate of Compliance with L.R. 11-6.2

The undersigned Pro Se certifies that this memorandum of points and authorities contains 6316 pages (5067 if Title, Tables, and Certificate of Compliance are excluded)  which complies with the word limit of L.R. 11-6.1.

_____
/s/
Richard J. Koppel
Pro Se