RICHARD J. KOPPEL
Inactive Member of
The State Bar of California
State Bar No. 95405
32 Bellvista
Lake Forest, CA 92610
Tel.: (949) 690-7242
Email: richardkoppel16@att.net
*Pro Se*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD J. KOPPEL,** <br><br> **Plaintiff,** <br><br> **v** <br><br> **ROBERT BONTA, in his official capacity as Attorney General of the State of California, DON BARNES, in his official capacity as the Sheriff-Coroner of the County of Orange, State of California, and DOES 1 – 10.** <br><br> **Defendants.** | **Case No.: 8:23-cv-00813-GW-DFM** <br><br> **REPLY OF PLAINTIFF TO THE OPPOSITONS OF DEFENDANT ROBERT BONTA AND DEFENDANT DON BARNES TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> **DATE:**      **OCTOBER 17, 2023** <br> **TIME:**      **10:00 A.M.** <br> **CRTRM:**      **6B** <br> **COURT:**      **U.S.D.C. SANTA ANA** <br> **BEFORE:**      **THE HONORABLE MAGISTRATE JUDGE DOUGLAS F. MCCORMICK** <br><br> **COMPLAINT FILED: 05/09/2023** |

# TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................................ 1

**I. PLAINTIFF IS NOT IN THE CATEGORY OF THOSE DESCRIBED AS FELONS AND MENTALLY ILL PROHIBITED BY LONG-STANDING LAW FROM POSSESSING FIREARMS.** . 8

      **A.  Heller's Reference To Long Standing Laws Prohibiting The Possession Of Firearms By Felons And The Mentally Ill Refers To Persons Whose Disarmament Would Have Been Tolerated By The Founders.** ........................................................................................ 8

      **B.  There is no evidence that Plaintiff is amongst the mentally ill who are prohibited from possessing firearms.** ........................................................................................... 9

      **C. We do not even know that Plaintiff failed a psychological examination.** ............... 10

**II.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.** ................................. 10

      **A. The Challenged Gun Laws Or Too Discretionary.** ................................. 11

      **B. The Challenged Gun Laws And *Bruen*'s Two-Part Test.** ........................ 12

        **1. The plain text of the second amendment clearly covers Plaintiff's desire to bear arms in public for lawful purposes, including self-defense, is a given.** ............................ 13

        **2.  The governmental Defendants have failed to meet the burden of demonstrating that the complained of regulatory laws are consistent with the Nation's historical tradition of firearm regulation.** ............................................................................................. 13

        **4. To be relevant under the "who" and "how" metrics analogues must be very close and of a comparable degree, with  comparable severity, and a comparable degree of blanket enforcement.** ............................................................................................................. 15

1

**B. A Deprivation Of Constitutional Rights Unquestionably Constitutes Irreparable**

2

**Injury.** ....................................................................................................................17

3

**C. A likelihood of success on the merits strongly tips the balance of equities and the**

4

**public interest in favor of granting an injunction.** ...........................................18

5

**IV. DEFENDANT BARNES HAS WRONGFULLY BEEN DENYING GOOD MORAL**

6

**CHARACTER BY USE OF AN IMPERMISSIBLE BURDEN OF PROOF TO DETERMINE**

7

**SUITABILITY. THE THIRD AND FOURTH PARTS OF THE WINTER TEST.**.................................18

8

**V. SB2 DOES NOT MOOT THIS ACTION.** ............................................................20

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

( *People* v. *Bonin* (1988) 46 Cal.3d 659, 673 [ 250 Cal.Rptr. 687, 758 P.2d 1217............................................19

*Baird v. Bonta*, No. 23-16016, Slip at 19 (9th Circ.  Sept. 7, 2023) ...................................................15

*Bolling* v. *Sharpe*, 347 U.S. 497, 499-500 ...........................................................................19

District of Columbia v. *Heller* , 554 U.S. at 635, 128 S.Ct. 2783.........................................2, 4, 8, 11

*Duncan v. Bonta*, 17-cv-1017-BEN-JLB, Slip Opinion, 58 (SD Cal. Sept. 22, 2023). .....................................15

*Elrod v. Burns* , 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)...........................................17

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961) .........................12

*Melendres v. Arpaio* , 695 F.3d 990, 1002 (9th Cir. 2012)...............................................................17

*Meyer* v. *Nebraska*, 262 U.S. 390, 399 ..................................................................................19

*N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen* 142 S. Ct. 2124 n.1 (2022)........................................ passim

Range v. Attorney Gen., 53 F.4th 262, 266 (3d Cir. 2022)................................................................ 8

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) .................................................18

## Statutes

California Penal Code §26150 ..............................................................................................7

## INTRODUCTION

The State claims that the Supreme Court "recognized the authority of states to deny a license to '"individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon."' *N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen* 142 S. Ct. 2124 n.1 (2022) (citing Connecticut's 'suitable person' standard approvingly)." (OPP BONTA[1] pg. 1, lns. 4 -8.)  This is simply untrue.  In footnote 1 of Bruen the high court was noting that 43 states were "'shall issue' jurisdictions where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." (*Bruen*, 142 S. Ct. at 2123.)  In the footnote the high court noted that "[t]hree States—Connecticut, Delaware, and Rhode Island—have discretionary criteria but appear to operate like 'shall issue' jurisdictions.  See Conn. Gen. Stat. § 29–28(b) (2021); Del. Code, Tit. 11, § 1441 (2022) ; R. I. Gen. Laws § 11–47–11 (2002)." (*Bruen*, 142 S. Ct. at 2123 n.1.)  There is nothing in this language expressing approval of Connecticut's "suitable person" standard as the

_____

[1] Defendant Rob Bonta's Opposition to Plaintiff's Motion for Preliminary Injunction

**REPLY OF PLAINTIFF TO OPPOSITONS OF DEFENDANTS TO PLAINTIFF'S MOTION FOR PRELIMNARY INJUNCTION**      **1 |** P A G E

state claims.   However, for the most part Conn. Gen. Stat. § 29–28(b) (2021) only applies objective standards in defining a "suitable person," which is what the high court was noting.   Thus, the State's claim that the high court did not call into question the requirement that a license applicant show "good moral character," with its subjective standards, is a blatant falsehood and misrepresentation of the law.

Next, the State claims that "[t]o the contrary, the Court repeatedly affirmed that the Second Amendment protects the right of *only* 'law-abiding, responsible citizens to use arms' for self-defense."  *Id.* at 2131 (citing *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008))." (OPP BONTA pg. 1, lns. 11 - 14 italic added.)  Again, the State blatantly misstates what the high court said in what may be an attempt to mislead the court.  What the high court actually said was "[t]he Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense. *Heller* , 554 U.S. at 635, 128 S.Ct. 2783.  It is this balance—struck by the traditions of the American people—that demands our unqualified deference." (*N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen* (2022) 142 S. Ct. 2111, 2131.)  Nowhere did the high court depart from its prior language of "lawful purposes" to a more

limited "self-defense" standard, as the State asserts.

Without citation to any authority, the State goes on to claim that "the good moral character and psychological exam requirements fall comfortably within 'this Nation's historical  tradition of firearm regulation,'  id.— specifically, the well-established tradition of  regulating the carry of weapons by untrustworthy, dangerous, or mentally unstable persons." (OPP BONTA pg. 2, lines 5 - 9.)  The lack of any citation to any authority should relegate this claim to the circular file.

The State goes on to state that petitioner was denied a permit to carry a concealed weapon (CCW) due to a lack of good moral character "after he failed to pass a psychological exam." (OPP BONTA pg. 5, lns. 5 - 7.)  But this raises the unexplained issues of what does the psychological exam look at, test or measure, and what standards are applied to determine a pass or failure?  And more importantly, are the criteria objective or impermissibly subjective?  The only evidence offered is the Declaration of Carlos Sanchez.  The sergeant says that Plaintiff "failed" the test but nothing is said to indicate that he is competent to even make that statement. Did he read and understand the doctor's report or is he relying on what?

**REPLY OF PLAINTIFF TO OPPOSITONS OF DEFENDANTS TO PLAINTIFF'S MOTION FOR PRELIMNARY INJUNCTION**      **3** | P A G E

1

2

3

4          Again without citation to authority, the State claims that "[u]nder the

5   text-and-history standard set forth in *Bruen*, it is Plaintiff's burden to establish

6   that the good moral character and psychological exam requirements infringe

7   on conduct protected by the plain text of the Second Amendment." (Opp

8   Bonta pg. 7, lns. 18 - 21.)  The State is wrong again.  "The Second

9   Amendment protects the right  of 'law-abiding, responsible citizens'" to carry

10  arms in self-defense.  *Bruen*, 142 S.  Ct. at 2138 n.9 (citing *Heller*, 554 U.S. at

11  635)." (OPP BONT at pg. 7, lns. 22 - 24.)  Thus, it is the State's burden to

12  justify its regulation, not petitioner's burden to establish that the good moral

13  character and psychological exam requirements infringe on conduct  protected

14  by the plain text of the Second Amendment.  In other words, it is the State's

15  burden to establish that  the good moral character and psychological exam

16  requirements *do not infringe* on conduct protected by the Second Amendment.

17  Perhaps the State confused conduct with members of groups that have been

18  barred by long standing laws from possessing firearms?   Since the Attorney

19  General know that Plaintiff is not a convicted felon, this would appear to be a

20  cheap shot at calling Plaintiff mentally ill. Plaintiff comments on mentally ill

21  below.

22          The State then repeats its absurd claim that "that states are allowed to

23

24

25

26

27

28

have a licensing system with 'discretionary criteria.'" (OPP BONTA pg. 8, lns. 15 - 17.)  Because this false claim has been dealt with above, it need not be dealt with here.

The State asserts that "[i]n fact, at least 21 of the 43 states referenced in *Bruen* with 'shall-issue' licensing standards allow officials to deny licenses to persons 'found not to be law-abiding or responsible based on a determination that the applicant lacks the character or temperament to carry firearms in public spaces or otherwise presents a danger to self, others, or the community at large.'" (OPP BONTA pg. 8, lns. 26 - 28, pg. 9, lns. 1 - 3.)  This is a gross misrepresentation.  While it is not unexpected  that all states would deny carry permits to those who are not lawfully allowed to possess firearms, the discretion the State refers to is simply irrelevant or non existent because twelve of the twenty-one states mentioned are permit-less carry states, meaning that they allow concealed carry without the need to obtain a permit or license. Sometimes called "Constitutional Carry". Those states are Alabama, Arkansas, Georgia, Indiana, Iowa, Maine, Missouri, Montana, North Dakota, South Dakota, Utah and Wyoming. (See https://www.handgunlaw.us/documents/Permitless_Carry_States.pdf) Thus, whatever discretion authorities in these twelve states may have it does not

extend to denying persons in these states the right to carry concealed firearms in public, as the State implies.

While the State claims that the good moral character and psychological exam requirements are consistent with the historical tradition of firearm regulation, it fails to cite any historical analogs for the obvious reason that there are none.  Glaringly missing, is a single regulation from the founding era that required a psychological exam before one could lawfully carry a firearm in public.  And, as the State acknowledges, California's good moral character is to be no more.

Turning to the Opposition of Sheriff Barnes' we see that it is little better.  Since many of the arguments there are covered already or are hereinbelow, Plaintiff will be brief. Mootness has been mentioned in a different way, but arguing a failure to complete the application by not doing the psychological exam is being moot as Plaintiff has agreed to do the examination and, with the assistance of Sheriff Barnes attorney,  the OCSD has referred instructed Plaintiff to schedule the examination so it can reopen the third claim.

Let the Sheriff argue that there is no due process violation as he will, there was a complete failure to give a hint of the statute's meaning of

good moral character.  It matters not a wit that the OCSD's policy manual prescribed how good moral character could be determined by determining if an applicant is reasonably suitable.

There is nothing to indicate that the Legislature intended to delegate authority to Defendant Sheriff to determine how moral character was to be determined.  Penal Code §26150 only delegates authority to the Sheriff to exercise discretion in issuing licenses after proof of the four requirements, it was four before good cause bit the dust,  had been established. This is not at all like the situation with Connecticut, where its Legislature adopted a suitability requirement.

Little weight, if any, should be given to the California decisions in which the Courts presume the validity of California laws, or ones in which the States appeal is unopposed by an accused who, after winning their demurrer cannot be located by the Appeals Project.

His Honor has indicated that at the hearing of this Motion he may order briefing may order regarding SB-2 and mootness.  If he does, Plaintiff anticipates raising the point, along with others, that SB-2 simply continues the amends and adds to the present unconstitutional laws, as opposed to circumstances in which the unlawful laws are abandoned.  The changes brought about by SB-2 actually further infringe on the right to keep and bear

arms.  That and where a Constitutional right is in controversy, nominal

damages prevent it being mooted.. These will later be addressed if the Court

finds the briefing necessary. Meanwhile, the law in question is not that

amended and enlarged by SB-2.

### I. PLAINTIFF IS NOT IN THE CATEGORY OF THOSE DESCRIBED AS FELONS AND MENTALLY ILL PROHIBITED BY LONG-STANDING LAW FROM POSSESSING FIREARMS.

**A.  Heller's Reference To Long Standing Laws Prohibiting The Possession Of Firearms By Felons And The Mentally Ill Refers To Persons Whose Disarmament Would Have Been Tolerated By The Founders.**

Taken "in context, Heller simply uses "law-abiding, responsible

citizens" as shorthand in explaining that its holding (that the

amendment codifies an individual right to keep and bear arms)

should not "be taken to cast doubt on longstanding prohibitions on

the possession of firearms by felons and the mentally ill, or laws

forbidding the carrying of firearms in sensitive places such as

schools and government buildings . . .."  554 U.S. at 626–27;

accord Range v. Attorney Gen., 53 F.4th 262, 266 (3d Cir. 2022)

(upholding 18 U.S.C. § 922(g)(1), which prohibits firearm

possession by convicted felons, because "the people" categorically "excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses"), reh'g en banc granted, opinion vacated, 56 F.4th 992 (3d Cir. 2023). In other words, Heller's reference to "law-abiding, responsible" citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights, i.e., groups whose disarmament the Founders "presumptively" tolerated or would have tolerated. See 554 U.S. at 627, n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). Bruen's reference to "ordinary, law-abiding" citizens is no different. See 142 S. Ct. at 2134. CHECK THIS CITE

**B. There is no evidence that Plaintiff is amongst the mentally ill who are prohibited from possessing firearms.**

Sergeant Sanchez declares that Plaintiff failed two psychological examinations. Unless a foundation is laid for his competency in the field of psychology, that declaration is inadmissible. What may be admissible

at best might be, under a business records exception to the hearsay rule, his testimony to the effect as to what was recorded in his Department's records. That may then be admissible depending on a showing of the competency of the declarant whose opinion was recorded.

### C. We do not even know that Plaintiff failed a psychological examination.

The State goes on to state that petitioner was denied a permit to carry a concealed weapon (CCW) due to a lack of good moral character "after he failed to pass a psychological exam." (OB pg. 5, lns. 5 - 7.)  But this raises unexplained issues. What did the psychological exam look at, test or measure and what standards are applied to determine a pass or failure?  How subjective was the criteria? In the opinion of the doctor was the examination failed or is that a misinterpretation by OCSD?

### II.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

Plaintiff succeeds on the merits due to California's firearm regulations allowing for impermissibly broad discretionary administration and their failure to meet the Nation's historical tradition test.

## A. The Challenged Gun Laws Or Too Discretionary.

The argument that Bruen allows the exercise of discretion is based on a false premise. *Bruen* has not, as Defendant Attorney General tells this Court, "made clear that states are allowed to have a licensing system with 'discretionary criteria.'" Bonta Opposition, pp. 8, ll. 15. Connecticut's suitability statute was not approved. Note 1 of Bruen was referring to Dwyer, in which the Connecticut Supreme Court read into the statute the requirement that suitability be determined by conduct, while the statute made no such conduct requirement. Moreover, the states of Connecticut, Delaware and Rhode Island were not "shall-issue" but "may-issue" states that were counted amongst 43 "shall-issue" because of the manner in which they operated, despite being "may-issue". For instance, the same note explains that in fiscal year 2022 Delaware only denied 112 out of 5,680 applications and renewals for concealed carry permits.

What saved Connecticut's suitability test discussed in note 1 was that it was part of the state's statute, while California's statute includes none. OCSD's policy manual calls for one to be used to determine good moral character, at least as of 2022, but its adoption and enforcement by Defendant Sheriff is discretionary. Even then, as discussed elsewhere, the denial of

Second Amendment rights where a citizen is only "reasonably likely" that a citizen is not suitable is outrageous.

### B. The Challenged Gun Laws And *Bruen*'s Two-Part Test.

"In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961)." *Bruen* at 2117 (from which note 1 is here omitted).

.

### 1. The plain text of the second amendment clearly covers Plaintiff's desire to bear arms in public for lawful purposes, including self-defense, is a given.

No conduct could be more clearly covered by the plain text of the Second Amendment than Plaintiff's desire to carry arms.

### 2. The governmental Defendants have failed to meet the burden of demonstrating that the complained of regulatory laws are consistent with the Nation's historical tradition of firearm regulation.

Bear in mind just what are the challenged laws. The outlawing carrying of concealed weapons, the law licensing concealed carry permits, the requirement that good moral character be proven to get carry concealed, the requirement that a person must submit to a psychological examination, , the outlawing of open carry, for which there is no practical way of obtaining a license.

### a. A region of the South is neither the Nation nor the South.

The gun laws found in a few states of the South fail to even demonstrate the existence of even a Southern tradition and the fact that they were not Nation's tradition is evident from the fact that a terrible Civil War was fought to end the horrific traffic of slavery. The traditions of four or five slave states do not even amount to the South's historical tradition.  At best they comprise a

regional tradition of but part of the South.  A part of the slavery tradition that was so rejected by the Nation that a terrible civil war was fought to end such Southern traditions.

**b.  Defendants also failed to demonstrate relevant analogues existing during the relevant time, which was 1791; the time of ratification of the Bill of Rights.**

There are arguments for including historic traditions existing at the time of the ratification of the Fourteenth Amendment, but the High Court tells us otherwise.

"We have generally assumed that the scope of the protection underline{applicable to the Federal Government and States} is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791" and that it wasn't necessary there to "address the issue" of whether primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining the scope of " the Second Amendment. . . because, . . . underline{the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry}." *Bruen*, 2137 -2138.

[Underlining added by Plaintiff.]

**4. To be relevant under the "who" and "how" metrics analogues must be very close and of a comparable degree, with comparable severity, and a comparable degree of blanket enforcement.**

"Because states in 1791 and 1868 also grappled with general gun violence, <u>California must provide analogues that are "distinctly similar</u>," *id.* at 2131, to California's general open-carry ban in "how" and "why" they curtailed individuals' right to carry firearms, *id.* at 2132–33.

"Courts in our sister circuits have consistently recognized that the *Bruen* standard for identifying a <u>closely analogous</u> historical regulation is a demanding one." *Baird v. Bonta*, No. 23-16016, Slip at 19 (9th Circ. Sept. 7, 2023)

"In short, as numerous courts have correctly observed in applying *Bruen*, California must identify a historical analogue that curtails the right to peaceably carry handguns openly for self-defense to a <u>comparable degree</u>, with a <u>comparable severity</u>, and with a <u>comparable blanket enforcement</u> to California's open-carry ban." Ibid at 20. (Underlining here added for emphasis by Plaintiff.)

"(T)he State does not need to find a historical twin, but a second cousin twice-removed is not enough." *Duncan v. Bonta*, 17-cv-1017-BEN-JLB, Slip Opinion, 58 (SD Cal. Sept. 22, 2023).

Very little or nothing has been offered to show that any proffered analogues were comparably enforced.

Defendant Bonta's witness, Dr. Spitzer, doesn't even come close to offering any well-established, relevant analogues to California's firearm regime.

Example of Spitzer's historic analogues are those regulating the possession of firearms by slaves in four antebellum Southern states. For example, some gun laws only targeted slave states didn't target White people other than an abolitionist.[2] Alabama law allowed slaves caught keeping or carrying arms or ammunition to receive up to 39 lashes on

_____

[2] "As early as 1840, antebellum historian Richard Hildreth observed that violence was frequently employed in the South both to subordinate slaves and intimidate abolitionists. . . . Southern men thus carried weapons both 'as a protection against the slaves' and also to be prepared for 'quarrels between freemen'. Two of the most feared publc-carry weapons in pre-Civil War America, the 'Arkansas toothpick' and 'Bowie knife.' Were forged                               from                               this Southern heritage." Ruben, Eric, The Slave State Origins of Modern Gun Rights,   Brennan   Center   For   Justice   (Sept   30,   2015) https:/brennancenter.org/our-work/analysis-opinion   /slave-state-origins-modern-gun-rights

their bare back by order of a local Justice of the Peace. Spitzer Dec. p. 96, and an 1837 Arkansas statute forbade free negros and mullatos from keeping a firearm of any kind without being licensed. Spitzer Decl. p98.

## B. A Deprivation Of Constitutional Rights Unquestionably Constitutes Irreparable Injury.

"[T]he deprivation of constitutional rights '**unquestionably** constitutes irreparable injury.' " *Melendres v. Arpaio* , 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns* , 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ). Thus, evidence of an ongoing constitutional violation (i.e., a policy or practice) satisfies the second element of the injunctive relief test. *See id.* Also see the Ninth Circuit's recent holding in *Baird v. Bonta*, No.  23-15016 Slip Opinion at 22 (9th Circ., June 29, 2023):

"in cases involving a constitutional claim, a likelihood of success on the merits usually establishes irreparable harm, *Melendres*, 695 F.3d at 1002 . . ." and strongly tips the balance of equities and public interest in favor of granting a preliminary injunction, *Elsasser*, 32 F.4th at 731."

**C.  A likelihood of success on the merits strongly tips the balance of equities _and_ the public interest in favor of granting an injunction.**

"(I)n cases involving a constitutional claim, a likelihood of success on the merits usually . . . strongly tips the balance of equities and public interest in favor of granting a preliminary injunction, _Elsasser_, 32 F.4th at 731." _Baird_ at 22.

Hence, all four requirements of _Winter v. Natural Resources Defense Council, Inc._, 555 U.S. 7 (2008) have been met.

**IV.  DEFENDANT BARNES HAS WRONGFULLY BEEN DENYING GOOD MORAL CHARACTER BY USE OF AN IMPERMISSIBLE BURDEN OF PROOF TO DETERMINE SUITABILITY. THE THIRD AND FOURTH PARTS OF THE WINTER TEST.**

The most rigorous burden of proof to meet is for criminal matters in which personal liberty is at stake; beyond a reasonable doubt.  A lesser burden is applied in some matters; a reasonable certainty. An even lesser standard applicable to most civil law suits requires a plaintiff to prove that it is more likely than not that their case is true.  An even lesser standard of proof exists in some Veteran's Administration cases.  All a

veteran must establish is that it is as likely as not that their claim is true. Think of it as "tie that goes to the runner".

All that the OCSD was required to prove in order to find Plaintiff not to be of good moral character was to find that he was "reasonably likely" to be a danger to himself, to others, or the community. See Orange County SD Policy Manual ¶ 218.4.1. Decl. CS – Exh. F-5 – F-6.[3]

 "The phrase 'reasonable likelihood' . . . 'means something less than "more probable than not,'" and 'something more than merely "possible."'' ( *People* v. *Bonin* (1988) 46 Cal.3d 659, 673 [ 250 Cal.Rptr. 687, 758 P.2d 1217].)"  To deny a citizen the exercise of a Constitutional right on such a minimal standard of proof denies due process.

> "(T)he liberty . . . guaranteed [by the Fourteenth Amendment] . . . .
>
> (w)ithout doubt . . . denotes not merely freedom from bodily restraint
>
> but also the right of the individual . . . generally to enjoy those

_____

[3] The criteria for determining whether an applicant satisfies the good moral character requirement shall include whether the applicant "(i) Is reasonably likely to be a danger to self, others, or the community at large based on a past pattern of behavior or threats involving unlawful violence (including threats or attempts at suicide).  In making this determination, the Sheriff or authorized designee shall use an objective inquiry considering the facts and circumstance known at the time of the application or through the Sheriff's Department's investigation."

privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Meyer* v. *Nebraska*, 262 U.S. 390, 399. In a Constitution for a free people, there can be no doubt that the meaning of "liberty" must be broad indeed. See, *e. g., Bolling* v. *Sharpe*, 347 U.S. 497, 499-500.

For a citizen to be denied their Second Amendment rights on such a modest degree of proof is required, merely more than a possibility, is shocking!  Were one to recover $25 in Small Claims they would have to prove their case by a higher standard than the OCSD requires to be found. Some will argue that it is no less than the Connecticut suitability statute, but it only appears to have avoided disapproval by the Supreme Court in Bruen because of the objective, shall-issue way the state has been operating.

## V.  SB2 DOES NOT MOOT THIS ACTION.

As per this Court's prior order, at this hearing it may order briefing on SB2, but it is not now before this Court.  It is not now the law and may never be, as it has already been challenged in at least two other courts.  As for the argument that it does away with the good moral character requirement, that is best addressed later, but its deletion is an illusion.  The essence of GMC

remains in the determination of the "disqualified person", the determination of which is wide open to the exercise of unbridled  discretion.

Certificate of Compliance with L.R. 11-6.2

The undersigned Pro Se certifies that this Reply contains 4574 pages (4123 if Title, Tables, and Certificate of Compliance are excluded) which complies with the word limit of L.R. 11-6.1.

/s/*Richard J. Koppel*
RICHARD J. KOPPEL
Pro Se

Dated this  3rd day of  October, 2023.

/s/*Richard J. Koppel*
RICHARD J. KOPPEL
Pro Se